BAKER, Judge
(dissenting):
This Court reviews a military judge’s decision on the admissibility of evidence under an *358 abuse of discretion standard. United States v. Collier, 67 M.J. at 353 (C.A.A.F.2009). In this case, the military judge made a reasonable decision to exclude the evidence of Appellant’s alleged sexual relationship with HM2 C, certainly a decision that was within his discretion. This Court should not reverse that decision because it would have reached a different result.
DISCUSSION
“To reverse for an abuse of discretion involves far more than a difference ... in opinion.... The challenged action must [be] ... clearly unreasonable, or clearly erroneous in order to be invalidated on appeal.” United States v. Travers, 25 M.J. 61, 62 (C.M.A.1987) (citations and quotation marks omitted) (brackets added; ellipses in original). The military judge conducted a Military Rule of Evidence (M.R.E.) 403 balancing test, which he articulated on the record, and placed reasonable limits on the manner in which Appellant could seek to impeach HM2 C’s testimony based on them alleged sexual relationship.
A. Deference
The majority concludes that we should “accord the military judge’s ruling less deference” because he failed to articulate his analysis on the record. Collier, 67 M.J. at 353. A military judge is only required to “record his balancing analysis to the extent that his exercise of discretion may be fairly reviewed on appeal.” Government of the Virgin Islands v. Archibald, 987 F.2d 180, 186 (3d Cir.1993) (citation and quotation marks omitted). In my view, the military judge’s articulation makes it clear how and why he determined that evidence of an alleged sexual relationship was not legally relevant to bias and why the M.R.E. 403 and M.R.E. 611 considerations outweighed any potential factual relevance. The military judge cited the parties’ arguments to explore, on the one hand, the probative value of the evidence, and, on the other hand, the risk of prejudice, confusion, and waste of time. The record reflects that the military judge conducted a “proper balancing test” under M.R.E. 403, and this Court should give the appropriate deference to his ruling. United States v. Manns, 54 M.J. 164, 166 (C.A.A.F.2000).
B. M.R.E. bOS
Based on his analysis, the military judge found that the probative value of an alleged homosexual relationship to show HM2 C’s bias was “substantially outweighed by the danger of unfair prejudice, confusion of the issues” and “waste of time.” M.R.E. 403. This conclusion was based, inter alia, on the disputed nature of Appellant and HM2 C’s relationship. Appellant’s proffer consisted of her statement to the military judge that the relationship was sexual. Although defense counsel offered no further detail or tangible evidence of a sexual relationship, defense counsel stated that, “there are two other witnesses that we could call that would provide extrinsic evidence that would go to her bias.”[1] However, as defense counsel acknowledged, HM2 C denied that the relationship was sexual. So did HM2 C’s daughter, who filed an affidavit stating that the relationship was based on friendship and “nothing more.”
Based on the information presented during the Article 39(a), Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 839(a) (2000), session and in the parties’ briefs on the Motion for Appropriate Relief, the military judge reached the following findings and conclusions:
• “The defense has met their preliminary burden that the break-up of the relationship between this key witness and the accused may relate to motive by the witness to make the false allegation of larceny of military property.”[2]
• “The government presented evidence by cross-examination of the accused *359 and by affidavit that tends to refute any sexual aspect to the relationship.”[3]
• “[T]he sexual nature of this relationship is not sufficiently relevant.”[4]
The military judge noted, “under [M.R.E.] 403, ... there’s a danger that there’s going to be a confusion of the issues because what the trial may deteriorate into is a trial within a trial as to whether or not there was a sexual relationship.” In this ease, the risk was well-founded, as would be the case regardless of the nature of the evidence offered, not less so because of the sensitive nature of this information. Indeed, this raised the specter that HM2 C would be put “on trial” in addition to the accused.
Further, the military judge looked to M.R.E. 611 “to control the scope and mode of witness interrogation, to prevent the harassment of witnesses.” Questions regarding a homosexual relationship not only had the risk of embarrassing HM2 C, they carried the potential risk of investigation and separation under the military’s “Don’t Ask, Don’t Tell” policy. 10 U.S.C. § 654(b)(1) (2000).
Thus, the military judge properly identified the risks associated with permitting testimony regarding a sexual relationship, most of which would exist whether the information pertained to a heterosexual or homosexual relationship. The military judge reasonably concluded that those risks substantially outweighed the probative value of the information.
C. Reasonable Restriction
A witness’s bias “is subject to exploration at trial, and is ‘always relevant as discrediting the witness and affecting the weight of his testimony.’” Davis v. Alaska, 415 U.S. 308, 316, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974) (citation omitted). However, bias evidence, like any evidence, is subject to reasonable restrictions “to take account of such factors as ‘harassment, prejudice, confusion of the issues, the witness’ safety, or interrogation that [would be] repetitive or only marginally relevant.’ ” Olden v. Kentucky, 488 U.S. 227, 232, 109 S.Ct. 480, 102 L.Ed.2d 513 (1988) (quoting Delaware v. Van Arsdall, 475 U.S. 673, 679, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986)); see also Davis, 415 U.S. at 316, 94 S.Ct. 1105 (“Subject always to the broad discretion of a trial judge to preclude repetitive and unduly harassing interrogation, ... the cross-examiner has traditionally been allowed to impeach, i.e., discredit, the witness.”). “Generally speaking, the Confrontation Clause guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.” Delaware v. Fensterer, 474 U.S. 15, 20, 106 S.Ct. 292, 88 L.Ed.2d 15 (1985).
Consistent with these constitutional dictates, the military judge did not adopt an all or nothing approach, as the majority suggests. Rather, exercising his discretion, the military judge balanced the factors at hand in light of the law permitting the defense “to explore the issue of bias and motive to misrepresent, under M.R.E. 608(c),” and ultimately limited the evidence to uncontested evidence that had less risk of prejudice or harassment. Specifically, the military judge allowed the defense to “characterize the relationship as close, personal and/or emotionally close,” but restricted the defense from “open[ing] the issue of any alleged sexual acts between the witness and the accused.” The military judge also permitted defense counsel to ask HM2 C whether she “believed [Appellant] had a crush on [HM2 C].” As this Court has said, “once the defendant has been allowed to expose a witness’s motivation in testifying, ‘it is of peripheral concern to the Sixth Amendment how much opportunity defense counsel gets to hammer that point home to the jury.’ ” United States v. Carruthers, 64 M.J. 340, 344 (C.A.A.F.2007) (citation omitted).
D. Speculation About Unfair Prejudice
Even if the military judge had meticulously articulated every detail of his analysis (and he came close), the majority implies that the military judge could not have *360 reached a reasonable decision to exclude the evidence because any such decision would require speculation. See Collier, 67 M.J. at 354-55. Presented with these facts, if the military judge could not reasonably speculate about “the danger of unfair prejudice, confusion of the issues, or misleading the members” and whether those considerations outweigh the probative value of evidence, it seems that the military judge had no discretion whatsoever. M.R.E. 403.
The majority compares this case to Olden v. Kentucky, in which the Supreme Court held that the judge abused his discretion by excluding evidence of an interracial sexual relationship based on “[sjpeculation as to the effect of jurors’ racial biases.” 488 U.S. at 232, 109 S.Ct. 480. However, in contrast to this case, the relationship at issue in Olden was uncontested. Id. at 230, 109 S.Ct. 480. Further, while the relationship in Olden showed the victim’s potential motive to lie about the crime, as in this case, Appellant’s theory is much less. plausible than that presented in Olden. Id. In addition to lying about the crime, Appellant and the majority posit that HM2 C purchased 215 tools (even though it is questionable whether all were publicly available for purchase), etched Appellant’s command code on 65 of them, and otherwise fabricated the entire crime. Collier, 67 M.J. at 356-57. Thus, under this theory, after exposing herself to perjury charges, revealing an illicit sexual relationship, and risking separation from the service, HM2 C would have her revenge. This theory, of course, also presupposes that the Navy, having received the store-bought tools, negligently concluded that the tools were government property or wittingly joined in HM2 C’s conspiracy.
Additionally, the majority argues that the suggestion of a sexual relationship would have made it more likely that Appellant slashed HM2 C’s tires out of anger, rather than to interfere with the key witness against her. Id. at 356. Here too, rather than speculating about how the members might apply this information, the military judge’s well-balanced decision permitted the members to draw their own reasonable conclusions regarding the animosity between Appellant and HM2 C. The members heard that HM2 C and Appellant had a falling out, HM2 C attempted to obtain a restraining order against Appellant, and that, just prior to the tire slashing incident, they had argued about HM2 C returning Appellant’s property to her. It is doubtful that an additional suggestion, disputed and refuted, of a sexual relationship between Appellant and HM2 C would have caused the members to reach a different verdict.
It equally “strains all logic” to suggest that an angry, vengeful lover would go to such extremes, but that an “angry, vengeful friend” would not. Id. at 349. To be sure, it is a leap in logic to conclude that a sexual relationship would drive someone to do all this in a way that the disintegration of a relationship that was “emotionally close” and “closer than ordinary friends” would not. It also thoroughly discounts the sophistication of military members to identify and assess the myriad ways in which relationships are formed and broken and the hurt that results. Therefore, the military judge reasonably concluded that information about the alleged sexual nature of Appellant’s and HM2 C’s relationship, above and beyond what the military judge actually admitted, was “not sufficiently relevant.”
CONCLUSION
Limiting defense questioning about a witness’s sexual life absent a valid showing of proof and legal relevance is a reasonable limitation on an accused’s right to present a defense and confront a witness. The military judge properly used his discretion to allow Appellant to identify HM2 C’s potential bias while limiting it to avoid prejudice, confusion, waste of time, and harassment of the witness.
As a result, like the United States Navy-Marine Corps Court of Criminal Appeals, I would conclude that the military judge did not abuse his discretion by excluding evi *361 dence of an alleged sexual relationship between HM2 C and Appellant. United States v. Collier, No. NMCCA 200601218, 2008 CCA LEXIS 53, at 11, 2008 WL 495700, at *4 (N.M.Ct.Crim.App. Feb. 21, 2008) (unpublished). I respectfully dissent.

. One of these witnesses was the detective who investigated the case.

. Findings and Ruling on Government Motion In Limine at 2, United States v. Collier, Special Court-Martial, Tidewater Judicial Circuit (Nov. 24, 2004).

. Id. at 1.

. Id. at 2.